OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 22, 1999

The Honorable Michael Wenk
Hays County Criminal District Attorney
110 East Martin Luther King Boulevard
San Marcos, Texas 78666

Opinion No. JC-0112

Re: Whether article 5.045, Code of Criminal Procedure, applies when a police officer escorts a victim of family violence back to scene of assault, and related questions (RQ-0053)

Dear Mr. Wenk:

You have asked this office two related questions about "civil standbys," the practice in which peace officers accompany victims of domestic violence to the residence typically shared by victim and assailant in order to protect the victim while she or he is taking her or his personal property and the property of a minor child in her or his custody from the residence to a place of safety. You are concerned both with the general application of article 5.045 of the Code of Criminal Procedure, which authorizes such "civil standbys" and immunizes the peace officer participating in them, and with the interaction of article 5.045 and article 17.292 of the Code of Criminal Procedure or chapter 85 of the Family Code, which govern the issuance and form of protective orders designed to prevent domestic violence.

You first ask whether the protection from liability afforded by article 5.045 is available when the victim of family violence returns to the scene of the assault as well as at the time of the original assault. We conclude that it is, and that indeed the statute was particularly designed for such a situation.

Second, you ask whether a magistrate or lawyer may request that a peace officer escort a victim who has received a protective order back to the residence to retrieve personal property, and if the provision of such assistance to the victim would be in violation of the protective order. In our view, the situation about which you have asked—namely the provision of such an escort to the *victim* of family violence—does not present difficulties under the protective order statutes or under article 5.045. However, the factual situation which, you inform us, was the occasion for your question—namely, the provision of such an escort to the *perpetrator* of family violence—is not within the contemplation of article 5.045, and might well violate the terms of a protective order issued pursuant either to article 17.292 or to chapter 85. According to article 17.292 and to section 71.16(c) of the Family Code, such a violation cannot be cured or excused by the consent of the

victim or any other person. The terms of a protective order under either statutory framework can, as those statutes make explicit, only be modified by the court.

Article 5.045 was added to the Code of Criminal Procedure in 1995. Act of May 24, 1995, 74th Leg., R.S., ch. 565, sec. 1, 1995 Tex. Gen. Laws 3362 (eff. Jun. 14, 1995). It provides:

> (a) In the discretion of a peace officer, the officer may stay with a victim of family violence to protect the victim and allow the victim to take the personal property of the victim or of a child in the care of the victim to a place of safety in an orderly manner.
>
> (b) A peace officer who provides assistance under Subsection (a) of this article is not:
>
> (1) civilly liable for an act or omission of the officer that arises in connection with providing the assistance or determining whether to provide the assistance; or
>
> (2) civilly or criminally liable for the wrongful appropriation of any personal property by the victim.

TEX. CODE CRIM. PROC. ANN. art. 5.045 (Vernon Supp. 1999).

Your first question suggests that it is unclear whether a "civil standby" under article 5.045 is authorized at a time other than that during which the police are investigating a complaint of domestic assault. Since the phrase "the officer may stay" might be read to authorize his remaining on the scene at the time of the domestic assault, or his returning to the scene and remaining with the victim at a later time, the statutory language by itself is somewhat ambiguous. However, we believe that an examination of the provision's legislative history indicates that later "civil standbys" were specifically within the contemplation of the legislature.

The need for a statute such as article 5.045 had been suggested by the Senate Interim Committee on Domestic Violence's Report to the Seventh-fourth Legislature [hereinafter Interim Committee Report]. Recommendation VIII.4 of that report reads:

> Grant immunity for peace officers who wish to provide protective standby assistance to a victim of domestic violence who is leaving their batterer in order to prevent future acts of violence. The victim is to be informed that the police officer is only there to protect him/her from violence, the officer will not assist in making any decisions regarding the division of property.

In the Commentary to their recommendation, the Interim Committee wrote:

> A victim of domestic violence may plan to leave an abusive partner *at a time when violence is not occurring.* Research has shown that victims of domestic violence are in greater danger of serious or fatal injury when they leave their abuser than when they stay. (Hart, 1992). Many victims request protective assistance from their local police department when they attempt to leave. *If the victim is not asking for the police to investigate a crime that has already been committed,* this assistance is often called a "civil standby." Although many police departments provide this type of assistance to victims of domestic violence, others refuse on the basis of not wanting to get involved in a "civil" matter.
>
> . . . .
>
> Police departments who do not provide protective assistance to victims express a fear of civil litigation as the barrier.

Interim Committee Report, at 63 (emphasis added).

In testimony before the Senate Jurisprudence Committee on January 31, 1995, Rob Kepple, General Counsel of the Texas District and County Attorneys Association, who spoke in support of the measure which became section 5.045, said the following:

> I think what [the] bill was aimed to do was in those instances where someone has left the house because of domestic violence—perhaps a protective order or charges have been filed—and they wanted to go back to the house and pick up personal items but they're fearful to do that, police officers, it's my understanding, a lot of times would like to help out. They'd like to make sure that the person can do that and that there's no further violence. So what the committee's tried to do is draft a bill that allows the officer to accompany a person to the home just to pick up personal property.

Finally, in a colloquy with one member of the committee during the same hearing, Senator Brown, the sponsor of the legislation, answers as to its intent:

> Q.: So, Mr. Chairman, for purposes of intent, what we are attempting to do—this particular scenario that's addressed in the bill addresses an issue prior to a divorce? Is that correct? Senator Brown?
>
> Senator Brown: Yes.

> Q.: And we have violence that's perpetrated upon one of the spouses and the spouse leaves with a child or children? And then we have a police officer that wants to assist so if there's a standby assistance request that *the police officer goes back with that victim to the residence to pick up personal property?* That's what we're contemplating in terms of intent, regardless of judges and whoever else needs to interpret?
>
> Senator Brown: That's correct.

*Hearings on Tex. S.B. 284 Before the Senate Jurisprudence Comm.*, 74th Leg., R.S. (Jan. 31, 1995) (transcript available from Senate Staff Services Office) [hereinafter Senate Jurisprudence Comm. Hearings].

You first ask whether article 5.045(b) provides "the same protection against civil or criminal liability when a peace officer escorts the victim . . . back to the scene . . . after the initial assault to allow the victim to retrieve personal items?" Letter from Michael Wenk, Hays County Criminal District Attorney, to Honorable John Cornyn, Attorney General 3 (Apr. 6, 1999) (on file with Opinion Committee) [hereinafter Request Letter]. As the foregoing legislative history suggests, we conclude that it does. The Interim Committee's Commentary notes that the victim may decide to leave "at a time when violence is not occurring." Interim Committee Report, at 63. The Commentary defines a civil standby as occurring when "the victim is not asking for the police to investigate a crime that has already been committed." *Id.* The testimony of Mr. Kepple indicates that the bill was concerned with what happens "in those instances where someone has left the home because of domestic violence." Senate Jurisprudence Comm. Hearings, *supra.* And the colloquy between the bill's sponsor and a member of the Senate committee considering it indicates that the law's intent is to cover a situation in which a "police officer goes back with th[e] victim [of domestic violence] to the residence to pick up personal property." *Id.* In light of this, we conclude that article 5.045 of the Code of Criminal Procedure protects, and was expressly intended to protect, law enforcement officers who accompany victims of domestic violence to their residences for the purpose of collecting personal property after those victims have vacated the premises from civil liability for acts or omissions that arise in connection with such assistance, as well as from civil or criminal liability for any wrongful appropriation of personal property by the victim.

Your second question is whether any magistrate or lawyer may request that the police escort a victim, and whether the police may provide such an escort to a victim when a protective order is in place. As the testimony quoted above from Mr. Kepple would indicate, it was certainly within the contemplation of the legislature that civil standbys might occur when "perhaps a protective order or charges had been filed." *Id.* Moreover, we do not believe that such an escort to a victim, whoever may have requested it, is likely to violate such an order, precisely because it is not the *victim* but the *perpetrator* of family violence who is to be restrained by the order.

The relevant statutory provisions here are article 17.292 of the Code of Criminal Procedure (relating to emergency protective orders) and section 85.022 of the Family Code, and in particular section 85.022(b)(3), which provides:

> (b) In a protective order, the court may prohibit *the person found to have committed family violence* from:
>
>     . . . .
>
> (3) going to or near the residence or place of employment of a member of the family or household.

TEX. FAM. CODE ANN. § 85.022 (Vernon Supp. 1999). Similarly, article 17.292 provides that a magistrate "may prohibit *the arrested party* from . . . going to or near . . . the residence . . . of a member of the family or household or of the person protected under the order." TEX. CODE CRIM. PROC. ANN. art. 17.292 (Vernon 1999) (emphasis added). The plain language of the statutes makes it clear that the person restrained from going to or near a residence is the assailant, not the victim. Accordingly, neither a request for assistance to the victim of the sort governed by article 5.045 nor the provision of such assistance to the victim is likely to violate a protective order.

We caution, however, that the factual situation which, you inform us, gave rise to your questions presents a very different picture. As you describe it, a Hays County constable was "contacted by *an accused* who had been placed under a magistrate's order for emergency protection" and asked by him to accompany him to his residence, which was also that of the victim, to retrieve personal papers. Request Letter, *supra.* The accused asserted that the justice of the peace who issued the order had told him to ask the constable to accompany him to the residence, but he had no written order to this effect. Upon contacting the victim to see what arrangements could be made so that the accused could get his papers, the constable was told by the victim "that she had been expecting his call since the District Attorney's Office and the justice of the peace had informed her that a peace officer would be escorting her husband to the residence at some time." *Id.*

We do not have all the facts necessary to make a judgment in this situation and cannot find facts in the opinion process, and therefore we cannot address the particular concerns the constable had in this instance. However, on a more general level, his apparent concern that bringing a perpetrator of family violence back to the scene might violate the terms of a protective order may very well be justified. Moreover, such an act is clearly not exempted from liability by article 5.045. That statute speaks only to the provision of assistance to the victim of domestic violence. It does not offer such assistance to batterers.

As to whether such assistance to the perpetrator might violate the terms of a protective order, that would of course depend on the terms of the order in question. However, as section 85.022(b)(3) and article 17.292, quoted above, make clear, it is certainly possible that such an escort might

contravene a term of the order "prohibit[ing] the person found to have committed family violence from . . . going to or near the residence . . . of a member of the family or household."

Moreover, as you point out, protective orders, whether issued pursuant to article 17.292 or chapter 85 of the Family Code, routinely contain certain prominently displayed language mandated by either article 17.292(f) or section 85.026(c), to this effect:

> NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.[1]

Neither the victim, nor an attorney, has the power to authorize what a protective order forbids. While pursuant to section 87.001 of the Family Code a protective order may be modified after notice to the other parties and a hearing, such modification must in our view be in writing and certainly requires more than a statement by the victim that the district attorney or a magistrate had told her to expect the police to arrive escorting her assailant.

In the event that there is in place a protective order forbidding a perpetrator of family violence from going to or near the family residence, unless and until that order is formally modified by the court, an officer of the law would be ill-advised to aid, or indeed to permit, the subject of such an order to go to the prohibited dwelling for any purpose. An escort of a perpetrator of family violence to the residence shared with the victim, whether or not it violates the terms of a protective order, is not the provision of standby assistance contemplated by article 5.045 of the Code of Criminal Procedure.

---

[1]Effective September 1, 1999, this language will be found in section 85.026(a) rather than section 85.026(c). *See* Act of May 30, 1999, 76th Leg., R.S., S.B. 50, § 4 (to be codified at TEX. FAM. CODE ANN. § 85.026).

# S U M M A R Y

Article 5.045 of the Code of Criminal Procedure protects, and was expressly intended to protect, law enforcement officers who accompany victims of domestic violence to their residences for the purpose of collecting personal property after those victims have vacated the premises from civil liability for acts or omissions that arise in connection with such assistance, as well as from civil or criminal liability for any wrongful appropriation of personal property by the victim. Neither a request for assistance to the victim of the sort governed by article 5.045 nor the provision of such assistance to the victim is likely to violate a protective order. An escort of a perpetrator of family violence to the residence shared with the victim, whether or not it violates the terms of a protective order, is not the provision of standby assistance contemplated by article 5.045 of the Code of Criminal Procedure.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee